In re **AXONA INTERNATIONAL CREDIT & COMMERCE LIMITED** (formerly **Bancom International Limited**), Debtor.

**No. 88 Civ. 5518 (MJL).**

United States District Court, S.D. New York.

May 11, 1990.

Order May 22, 1990.

Zalkin, Rodin & Goodman (Henry Goodman, Harold N. Schwinger, of counsel), New York City, for appellant Chemical Bank.

Stroock & Stroock & Lavan (Daniel Golden, Melvin A. Brosterman, of counsel), New York City, for Trustee.

Cleary, Gottlieb, Steen & Hamilton (Mark P. Friedman, of counsel), New York City, for Hong Kong Liquidators of Axona Intern. Credit & Commerce, Ltd.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court is an appeal by Chemical Bank of a decision and order entered by Bankruptcy Judge Burton J. Lifland on July 8, 1988 in the above-captioned bankruptcy proceeding. 88 B.R. 597. For the reasons discussed below, the appeal is denied.

## BACKGROUND

The bankruptcy of Axona International Credit & Commerce Limited ("Axona") has spurred legal proceedings in both Hong Kong and New York. This Court visits the issues arising out of Axona's winding-up proceeding after the Hong Kong Supreme Court and Judge Lifland have written extensive opinions regarding the bankruptcy. The scope of the action presently before this Court can be directly attributable to a single transaction between Axona and Chemical Bank ("Chemical").

This Chapter 7 case is the progeny of the Hong Kong winding-up proceeding concerning this debtor, Axona, pending in the Supreme Court of Hong Kong. The United States Chapter 7 trustee and the Hong Kong liquidators (collectively the "Joint Applicants"), creatures of the U.S. and H.K. Courts respectively, moved by way of a joint application (the "Joint Application") on notice to all creditors, asking the bankruptcy court to exercise its discretion and suspend the U.S. Chapter 7 case in accordance with Section 305(b) of the Bankruptcy Code (the "Code") and direct the turnover of the assets of the Chapter 7 estate to the Hong Kong liquidators for distribution in the primary Hong Kong winding-up proceeding.

Although a "broad range of parties" appeared in the proceedings before the Bankruptcy Court, Chemical alone opposed the Joint Application. Chemical cross-moved for an order dismissing the Chapter 7 case and vacating *ab initio* all proceedings instituted therein. Chemical along with other U.S. Banks were made defendants by the Trustee in several adversary proceedings brought pursuant to the Trustee's avoiding powers under the Code. All of the banks, including Chemical, entered into consensual settlement agreements with the Trustee re-

solving those proceedings. In settlement of the adversary proceeding pending against it, Chemical paid to the Trustee approximately $2.8 million. Judge Lifland, in a lengthy opinion, denied Chemical's cross-motion and granted the relief requested in the Joint Application.

In his opinion, Judge Lifland recites in great detail the facts surrounding Axona's bankruptcy and Chemical's involvement in these proceedings. We will presume familiarity with this comprehensive recitation of the facts and not further burden the already voluminous record.

Before this Court is Chemical's appeal of Judge Lifland's ruling. Chemical raises a number of constitutional and statutory objections to Judge Lifland's decision. Chemical strenuously objects to the Bankruptcy Court's decision to suspend the proceedings in the United States and transfer the recovered estate assets to the Hong Kong liquidators for distribution in the Hong Kong winding-up proceeding.

## DISCUSSION

As an initial matter, this Court must determine whether the Bankruptcy Court's decision is even reviewable at this time. Chemical appeals from the Bankruptcy Court's Order which stayed the proceedings before it and transferred the assets of the Chapter 7 estate to the Hong Kong liquidators pursuant to § 305(a) of the Code. Section 305(c) of the Code expressly states that a suspension order issued by a bankruptcy judge pursuant to § 305(a) "is not reviewable by appeal or otherwise." 11 U.S.C. § 305(c). While the express terms of the provision clearly preclude this Court from exercising jurisdiction at this time, it is an open question whether § 305 is constitutionally infirm after the Supreme Court's ruling in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) or was implicitly repealed by Congress's enactment of 28 U.S.C. §§ 157 and 158.

In *Marathon*, the Supreme Court ruled in a plurality opinion that the Bankruptcy Reform Act of 1978 was unconstitutional to the degree it conferred certain judicial powers on non-Article III judges. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858. The congressional response to *Marathon* was to enact the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "Amendments"). 28 U.S.C. § 151, *et seq.* Section 104(a) of the Amendments expressly states that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges." 28 U.S.C. § 158(a).

The issue thus presented is whether § 305 of the Code, which mandates that a bankruptcy court's suspension order is unreviewable, survives *Marathon* and the Amendments. Prior courts have split over whether and to what degree § 305(a) survives *Marathon* and the Amendments. *See Farmer v. First Virginia Bank of Fairfax County, Va.*, 22 B.R. 488, 490 (E.D.Va.1982) (reaching a compromise position by reading into § 305(c) an exception "permitting appeals based on constitutional grounds [to avoid making].... a non-Article III judge the final arbiter of constitutional questions arising under 305"); *In re Colorado Industrial Bank of Loveland*, 85 B.R. 855 (D.Col.1988) (holding that § 305(a) must be addressed to a district judge "since all jurisdiction is vested in the district court and only the district judge has Article III status"); *In re Aaronics Equipment Rentals and Sales, Inc.*, 56 B.R. 297, 299 (Bankr.M.D.La.1985) (bankruptcy court deferring the issue of abstention to the district court on account of the perceived unconstitutionality of issuing a non-appealable order); *In re Ronald J. Pankau*, 65 B.R. 204 (Bankr.Ill.1986); *Matter of First Landmark Corp.*, 51 B.R. 25, 27 (Bankr.M.D.Fla.1985); (bankruptcy court limiting its role on abstention motions to submitting proposed findings and conclusions); *In re Nexus Communications, Inc.*, 55 B.R. 596, 597 (Bankr.E.D.N.C.1985) (bankruptcy court upholding its power to issue an non-reviewable order pursuant to § 305(a) by finding that the abstention order was one entered by the district court

since the bankruptcy court was a unit thereof). *See also In re Corporacion de Servicios Medicos Hospitalarios de Fajardo,* 805 F.2d 440, 443 (1st Cir.1986) (in the context of 28 U.S.C. § 1334(c)(2), a similar bankruptcy provision, holding that "a strong case can be made for the proposition that, because of the statutory amendments.... the bankruptcy court lacked jurisdiction to issue an abstention order without the authorization of the district court").[1]

Neither the House nor the Senate issued a report regarding the Amendments, thereby, leaving it for the courts to determine the effect of the legislation on the then existing Code. Yet, "the statements of several influential legislators ... indicate that bankruptcy jurisdiction was to be construed as broadly as possible within the constitutional constraints of *Marathon.*" *In re Ben Cooper, Inc., et al. v. The Insurance Company of the State of Pennsylvania, et al.,* 896 F.2d 1394 (2d Cir.1990). Moreover, in originally enacting the Code, Congress determined that a bankruptcy court should have within its power the authority to dismiss or suspend a bankruptcy proceeding when necessary to best serve the interests of the creditors and debtor or to most efficiently administer the bankruptcy estate. As a result, we interpret the Amendments as implicitly repealing only those aspects of § 305 that do not survive constitutional scrutiny after *Marathon.* In other words, the scope of a bankruptcy judge's authority under § 305 shall be construed as broadly as possible within the confines of *Marathon.*

■ This result best facilitates the administration of our substantive bankruptcy laws. Bankruptcy judges should be granted as broad authority as constitutionally permissible in order to allow them to serve as effective custodians of our Bankruptcy Code. Because of bankruptcy judges' specialized experience and expertise, granting them such authority will best assure the economical and expeditious management of bankruptcy estates.

■ Section 104 of the Amendments states in relevant part:

> The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a). As the court stated in *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605 (C.D.Cal.1984):

> [U]nder the 1984 Act, the bankruptcy courts are no longer independent of the district courts but are their subordinate 'adjuncts'. The district court retains primary jurisdiction over bankruptcy proceedings. 28 U.S.C. § 1334. Bankruptcy judges are a 'unit' of the district court, and their exercise of adjudicatory authority is subject to the 'rule or order of the district court.' 28 U.S.C. § 151.

*Id.* In *Marathon,* the Supreme Court made clear that Congress "could grant the bankruptcy courts the right to issue final orders in proceedings that were at the core of bankruptcy jurisdiction, primarily the restructuring of the debtor-creditor relationship." *In re Ben Cooper, Inc.* A bankruptcy court's power to issue final orders pursuant to § 305(a) in core proceedings therefore conforms to the constitutional dictates of *Marathon.* Yet, the plurality in *Marathon* did make clear that original jurisdiction in all bankruptcy matters should be retained by the district court. Hence, allowing a bankruptcy judge to issue unreviewable final orders pursuant to §§ 305(a) and 305(c) would run afoul of the principles expounded upon in *Marathon.* Accordingly, the most logical interpretation of Congress's intent in enacting the Amendments, keeping in mind that the purpose of the Amendments was to conform the bankrupt-

---

**1.** In *In re Cash Currency Exchange, Inc.,* 762 F.2d 542, 555–56 (7th Cir.) *cert. denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985) the Seventh Circuit upheld the non-reviewability of an order under § 305(a) without discussing the possible constitutional infirmities. *Id. See also Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584, 585 n. 1 (3d Cir.1985) (quoting the language of § 305(c) without discussion).

cy statute to the dictates of *Marathon, see Matter of Wood*, 825 F.2d 90, 95 (5th Cir. 1987), is that Congress intended to implicitly repeal § 305(c) while leaving with bankruptcy judges the powers conferred to them by § 305(a). Any final orders rendered pursuant to § 305(a) of the Code would therefore be appealable as provided for by § 104(a) of the Amendments. Yet, in many instances, it may very well be that an order to suspend a bankruptcy proceeding pursuant to § 305(a) will be an interlocutory order subject to appeal only upon leave of the court. *See* 28 U.S.C. 158(a).

Moving on to the case at hand, however, the bankruptcy judge's order suspending the plenary code case and directing the turnover of the American estate to the Hong Kong liquidators is a final order and therefore appealable to this Court as of right. *See id.* The finality doctrine is less rigidly applied in a bankruptcy appeal than in an ordinary civil appeal. *See In re Johns–Manville Corp.*, 824 F.2d 176, 179 (2d Cir.1987). For all intents and purposes, once the orders of the bankruptcy judge are given effect, the American estate will be turned over to the Hong Kong liquidators and nothing of substance will remain to be done. Accordingly, the bankruptcy judge's ruling is appealable as of right pursuant to 28 U.S.C. § 158(a).

Having determined that we have jurisdiction to consider Chemical's appeal, we now turn to the merits of that appeal.

Chemical's appeal raises a potpourri of constitutional claims, all of which are devoid of merit. Chemical first argues that §§ 303(b)(4) and 304 of the Code combine to grant a foreign representative a unilateral option to determine whether U.S. or foreign avoidance law should apply and, therefore, these provisions violate Article 1, Section 8, and Article III of the Constitution.

Article 1, § 8 empowers Congress to enact "uniform" bankruptcy laws. In a plenary case commenced pursuant to § 303(b)(4), United States bankruptcy law controls while in an ancillary proceeding instituted under § 304, it is possible that the foreign law would govern any recovera-

ble preferences. Chemical argues that "[t]hese two parallel, but different, sections (Code §§ 303(b)(4) and 304), in combination, contain an unconstitutional Congressional delegation of judicial power to a foreign representative, who by his option to select either a plenary case or an ancillary proceeding, in effect, performs and preempts the judicial function of determining whether United States or foreign law shall govern." Appellant's Memorandum at 16. In making this argument, Chemical fails to recognize that § 304(b) leaves with the bankruptcy court sole discretion to determine whether to grant comity to foreign bankruptcy law. The bankruptcy court by weighing the factors set forth in § 304(c) is to determine "what will best assure an economical and expeditious administration of such estate" including which country's law should apply and, in fact, even whether an ancillary case should be entertained at all. As a result, appellant's claim fails since the premise of its argument that the §§ 303(b)(4)/304 statutory scheme grants a foreign representative a unilateral option to determine which law applies is, in fact, erroneous.

Chemical also invokes the Fifth Amendment in challenging the Bankruptcy Court's decision on an assortment of grounds. We have carefully considered these remaining constitutional arguments and find them of insufficient merit to warrant discussion. We concur with the Bankruptcy Court's analysis and conclusions in rejecting those of Chemical's creative Fifth Amendment claims which it addressed.

Next, Chemical argues that it was an abuse of discretion for the Bankruptcy Court to suspend the action and transfer the Estate funds to Hong Kong because A) the case instituted was a plenary case under the Code and B) the Bankruptcy Court had previously allowed the Trustee to exercise the Code's avoiding powers. Chemical argues that a foreign representative may seek suspension pursuant to § 305(a)(2) only in an ancillary proceeding under § 304 and not in a plenary case instituted pursuant to § 303(b)(4). Yet, § 305(a)(2) merely states that

[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if.... (2)(A) there is pending a foreign proceeding; and (B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

Chemical argues that since § 305(a) authorizes a court to dismiss or suspend a case in favor of the primary foreign proceeding based upon the six enumerated factors set forth in § 304(c) and these factors also govern the determination as to whether a turnover order should be issued in an ancillary case under § 304(b), the bankruptcy court's power to suspend a proceeding in favor of a foreign bankruptcy proceeding only applies to ancillary cases. Section 305(a)(2), however, has no such limiting language. In fact, § 305(a) explicitly authorizes the suspension of any "case under this title." The plain meaning of this language is clear. A bankruptcy court may suspend any proceeding commenced under §§ 301, 302, 303, or 304. *See* Kennedy, *The Commencement of a Case Under the Bankruptcy Code*, 36 Wash. & Lee L.Rev. 977, 1023 (1979).

█ Chemical's second contention that suspension pursuant to § 305(a) may not be granted once the Code's avoiding powers have been invoked is also without foundation. Chemical argues that once the avoiding powers are utilized and nothing else remains to be done, the Trustee must make a distribution to creditors in accordance with § 726 of the Code. This Court, however, agrees with the bankruptcy court's reading of the legislative history of § 305 and the relevant case law and therefore concludes that the use of the Code's avoiding powers does not prohibit subsequent suspension of the proceeding. Rather, use of such power is an element that should be considered by the bankruptcy judge in weighing the factors enumerated in § 304(c). Since we are satisfied with the bankruptcy court's application of those factors in the case at bar, we find that its issuance of a suspension and turnover order pursuant to § 305(a) was not an abuse of discretion.

█ Lastly, Chemical claims that since the only action left to be done in the United States Chapter 7 case is ministerial in nature, the bankruptcy court's order is tantamount to an order of dismissal thereby calling into play § 349(b) and requiring reinstatement of the avoided transfer. Section 349(b) provides, in pertinent part, that "[u]nless the court, for cause, orders otherwise, the dismissal of a case.... (1) reinstates.... any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title.... (2) vacates any order, judgment, or transfer ordered under section 522(i)(1), 542, 550, or 553 of this title; and (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." *Id.* Even assuming the validity of Chemical's argument that § 349(b) applies, which is belied by the plain language of the provision, we find that the bankruptcy court would have had cause in this instance not to reinstate the avoided transactions since the suspension and transfer of assets was necessary in order to insure a fair distribution of Axona's Estate to all its creditors.

Accordingly, the Bankruptcy Court's decision is affirmed in all respects.

It Is So Ordered.

### ORDER

█ This Court hereby grants a stay of our May 11, 1990 Opinion and Order in the above-captioned case pending an appeal of that decision to the Second Circuit. This stay is conditioned upon Chemical Bank seeking an expedited appeal and posting a supersedeas bond in the amount of $1 million. *See* transcript of May 18, 1990 Hearing (for a full discussion of the reasons such a stay is being granted).

It Is So Ordered.