### In re AMERICAN CONTINENTAL CORPORATION, an Ohio corporation, Debtors.

**Nos. Civ. 89–1231 PHX–RMB, Civ. B 89–3117 PHX–RMB.**

United States District Court, D. Arizona.

Sept. 20, 1990.

See also 741 F.Supp. 1368.

Peter L. Duncan, Jennings, Engstrand & Henrikson, San Diego, Cal., for debtors in possession.

M. Laurence Popofsky, Peter J. Benvenutti, Heller, Ehrman, White & McAuliffe,

San Francisco, Cal., for Arthur Young & Co.

## MEMORANDUM OPINION

BILBY, District Judge.

### BACKGROUND

The Chapter 11 reorganization proceedings of the eleven subsidiaries of Lincoln Savings and Loan Association (Lincoln subsidiaries) are before this Court pursuant to a withdrawal of the reference on February 2, 1990.

Arthur Young & Company and its successor in interest Ernst & Young (hereinafter "Arthur Young") have filed proofs of claim against each of the debtor estates. The Lincoln subsidiaries raised objections and moved for judgment on the pleadings as to each of Arthur Young's claims.

Arthur Young's engagements on behalf of corporate parent-American Continental Corporation and the Lincoln subsidiaries form the basis for several civil actions which are proceeding in this Court. The proofs of claim assert that, to the extent Arthur Young "sustains damages by way of judgment or settlement," the Lincoln subsidiaries "shall be liable to Arthur Young for the damages sustained by Arthur Young, because the damages sustained would be the result, in whole or in part" of the Lincoln subsidiaries' conduct.[1]

### DISCUSSION

The central issue is whether Arthur Young's claims must be disallowed as a matter of law pursuant to 11 U.S.C. § 502(e)(1)(B) which provides, in relevant part:

(e)(1) [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

■ As a threshold matter, the parties dispute whether the statute is applicable to this type of claim at all. Assuming a resolution in favor of the Lincoln subsidiaries, the parties would then dispute whether Arthur Young's claims meet the criteria for disallowance under the statute.

I. Arthur Young contends that the section applies only to claimants who are contractually bound as codebtors. The statute does not expressly delimit the section to contract-based claims, however. It requires the bankruptcy court to disallow contingent claims for "reimbursement or contribution" by entities that are "liable with the debtor." Furthermore, the legislative history suggests that, rather than define the outer limits of the statute, Congress intended to effect a policy of precluding competition between creditors and those whose claims against the estate derive from creditors.[2]

The Eleventh Circuit has observed that section 502(e)(1)(B) "epitomizes a considered Congressional policy that underlies the Bankruptcy Code as a whole, and Chapter 11 in particular: that is, the bankrupt's estate should not be burdened by estimated claims contingent in nature. Rather, the debtor should be expeditiously rehabilitated and reorganized, thereby providing the bankrupt a fresh start, while simultaneously according fair treatment to creditors by paying ascertainable claims as quickly as possible." *In re Charter Company*, 862 F.2d 1500, 1502 (11 Cir.1989) [claims against debtor for reimbursement of re-

---

1. Additionally, Arthur Young's Proofs of Claim state: "Debtor was and is still liable to Arthur Young for damages ... in an amount yet to be determined, though potentially exceeding $400,-000,000 based on other parties' demands of damages against Arthur Young exceeding $400,-000,000 plus punitive damages, attorneys' fees and costs. In excess of $2,000,000 has already been expended by Arthur Young in defending certain actions ... which fees and expenses

continue to accrue and for which the Debtor is liable."

2. *See* House Report No. 95–959, 95th Cong., 1st Sess. 354 (1977); Senate Report No. 95–989, 95th Cong. 2d Sess. 65 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; 124 Cong.Rec.H 11,-094 (Sept. 28, 1978); S 17,410–11 (Oct. 6, 1978).

sponse costs incurred in hazardous waste clean-up within ambit of § 502(e)(1)(B)].

In light of the underlying policy, it would be antithetical to disallow contingent claims by sureties and guarantors, yet allow tort-based claims of indeterminate magnitude to compete for estate assets and impede the debtor's ability to reorganize. *See In re Amatex Corporation,* 110 B.R. 168, 171 (Bkrtcy.E.D.Pa.1990); *In re Wedtech,* 87 B.R. 279, 283 (Bkrtcy.S.D.N.Y.1988) [claims by joint-tortfeasors within scope of section]. Consequently, the weight of authority has found no reasoned basis to exclude claims which are not based on contract, and this Court finds no reason to reach a different conclusion. *See In re Wedtech Corp.,* 87 B.R. 279 (Bkrtcy.S.D.N.Y.1988); *In the Matter of Provincetown Boston,* 72 B.R. 307 (Bkrtcy.M.D.Fla.1987); *In re Baldwin-United Corp.,* 55 B.R. 885 (Bankr.S.D.Ohio 1985). Arthur Young's claims are encompassed by section 502(e)(1)(B).

II. The parties agree that disallowance pursuant to section 502(e)(1)(B) requires the establishment of three elements: (1) the claims must be for reimbursement or contribution, (2) the claimant must "be liable with the debtor," and (3) the claim must be contingent. *In re Provincetown-Boston Airlines, Inc.,* 72 B.R. 307, 309 (Bankr. M.D.Fla.1987).

Because the issue is brought on a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, Arthur Young contends that the Court may disallow the claim only if no facts could be proven which show that: (1) Arthur Young's claims against the Lincoln subsidiaries are direct, rather than for reimbursement or contribution, (2) Arthur Young is not liable on those claims with the Lincoln subsidiaries, or (3) the claims are not contingent. Arthur Young advances several creative arguments in an effort to extricate its proofs of claim from the embrace of section 502(e)(1)(B).

█ As a preliminary matter, however, the three elements described above simply paraphrase the statute. They are designed only to clarify its constituent parts and they have no meaning beyond what can be discerned from section 502(e)(1)(B), its legislative history, and the Congressional policy embodied therein. The Court cannot burden these criteria with highly legalistic trappings unless justified by the law Congress has enacted.

Moreover, Arthur Young attempts to synthesize the elements for disallowance under section 502(e)(1)(B) with the standard for dismissal under Rule 12(c), to the effect that a claim could not be disallowed under section 502(1)(e)(B) unless all conceivable factual permutations are analyzed and found to fall within rigid parameters. *Applying* the proper Rule 12(c) standard to the debtors' motion is not synonymous, however, with *importing* that standard into the fabric of section 502(e)(1)(B). Congress did not create such a requirement, and to impose one could defeat the purpose of the statute. The Court needn't consider every hypothetical factual outcome of underlying litigation. It must determine if the proofs of claim *which have been filed* assert claims of a type which fall within the statute. The Court concludes that they do.

Arthur Young postulates circumstances in which it might ultimately be found either that: (1) Arthur Young bears no liability whatsoever, or (2) it is passively liable, that is, it is liable only because the debtor withheld or concealed pertinent information. These possibilities, it is argued, preclude judgment on the pleadings for two reasons. First, under these scenarios Arthur Young's claims against the Lincoln subsidiaries would be direct, rather than for reimbursement or contribution. Second, Arthur Young would not be liable with the debtor for any defense costs incurred.

Nonetheless, Arthur Young's proof of claims simply do not assert direct liability against the Lincoln subsidiaries. They assert secondary liability. The claims state: "Debtor was and still is liable to Arthur Young for damages ... based on other parties demands of damages against Arthur Young." Under either hypothetical outcome, Arthur Young conjectures reimbursement for expenditures which did not originate from a direct claim against the

Lincoln subsidiaries, but from Arthur Young's defense of third-party allegations of wrongdoing with the debtor.

Next, Arthur Young argues that it is not "liable with the debtor" on certain of the claims made by the third parties. Arthur Young contends, for example, that because the Lincoln subsidiaries neither issued nor participated in the sale or distribution of securities, there is a set of causes action upon which they cannot be liable with Arthur Young. (Absent, however, is any explanation of how, under 11 U.S.C. § 501, Arthur Young could file a claim at all for reimbursement of expenses incurred as a result of causes of action which do not pertain to the Lincoln subsidiaries.) In the last analysis, however, Arthur Young's claims against the Lincoln subsidiaries arise out of third party lawsuits grounded on allegations of joint wrongdoing. This is sufficient to constitute a claim by an "entity that is liable with the debtor" within the meaning of section 502(e)(1)(B).

Finally, Arthur Young argues that its claims are not contingent to the extent that it has paid certain known costs for its defense. The extent of Arthur Young's liability, however, is contingent on the outcome of several pieces of untried litigation. As evidenced by its proofs of claim, liability could vary from zero to over $400,000,000. Furthermore, whether Arthur Young could actually compel these debtors to reimburse defense costs depends upon future events the occurrence of which is uncertain. *See In re Charter Corp.*, 862 F.2d at 1503.

## CONCLUSION

Arthur Young's proofs of claim assert contingent claims for reimbursement or contribution by an entity that is liable with the debtor within the meaning of 11 U.S.C. § 502(e)(1)(B) and must therefore be disallowed.