In re The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Debtors.

Michael R. SORENSON, Plaintiff–Appellant,

v.

The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Defendants–Appellees.

Nos. 90 Civ. 6954 (MP), 92 Civ. 4437 (MP). Bankruptcy No. 90 B 10421 (FGC).

United States District Court, S.D. New York.

Oct. 19, 1992.

See also 140 B.R. 347, 146 B.R. 84.

Ober, Kaler, Grimes & Shriver (Aaron R. Kahn, of counsel), New York City, for plaintiff-appellant.

Weil, Gotshal & Manges (Peter R. Gruenberger, of counsel), New York City, for defendants-appellees.

MILTON POLLACK, Senior District Judge:

Appellant is a former officer and employee of Drexel Burnham Lambert Inc. In February 1990, Sorenson was named as a defendant in a multi-defendant lawsuit brought by the Federal Deposit Insurance Corporation ("FDIC") in the Federal District Court for the Northern District of Texas, based on activities that Mr. Sorenson allegedly engaged in while an employee of Drexel. He was charged in the complaint with one, Chang, and others in an alleged scheme to illegally siphon assets from a savings and loan institution into a company controlled by Chang. The latter was convicted of securities fraud in connection with the transactions involved. The civil suit is still pending. Drexel was named as a co-defendant in the suit, but only on a *respondeat superior* claim.

Sorenson filed a proof of claim in the Drexel Chapter 11 proceedings, requesting indemnity for any liability judgment that might be entered against him and for defense costs incurred by him. This claim was made pursuant to a Drexel by-law provision providing indemnification for employees cast in judgment and incurring expenses in such a suit as described above, in the event that a finding has been made that the employee acted in good faith in the transactions sued on. Sorenson's claim is for the full amount of the *ad damnum* asserted in the Texas suit, $517,680,000, including about $100,000 allegedly incurred for legal expenses.

Drexel objected to Sorenson's claim as a contingent claim on which Drexel was co-liable and it was disallowed by the Bankruptcy Court pursuant to subsection 502(e)(1)(B) of the Bankruptcy Code.

In Drexel's Chapter 11 proceedings a global settlement was reached among the Fixed Creditors and the contingent securities claimants, including the FDIC. A division of assets was agreed on as to each claimant. However, the FDIC did not entirely relinquish its claims against the debtors in the Texas litigation. Among other things, the settlement agreement stipulates that Drexel is required to object to every

Claim Over against Drexel arising out of any liability established by a participant in the settlement against a third person who thereafter seeks indemnity against Drexel on the liability. The provision was agreed on to prevent an erosion of the pot being distributed to the settling parties by reason of third party Claims Over against Drexel such as that which Sorenson could make under the by-law.

The agreement between Drexel and FDIC provided that Drexel was obligated to seek an order disallowing and declaring unenforceable as against Drexel any Claim Over for indemnification, contribution, apportionment or reimbursement on any kind of claim or cause of action against the Claimant Over, e.g., Sorenson.[1] Drexel could have been found liable along with Sorenson after the settlement on a claim based on *respondeat superior.* The agreement further provided that if the Claim Over be determined to be non-contingent for purposes of the Bankruptcy Code, Drexel could control the conduct of a defense and if not successful any recovery would be charged back to the share of the settlement payable to the FDIC. In short, for purposes of this case, Drexel remained a party co-liable with Sorenson.

Subsection 502(e)(1)(B) of the Bankruptcy Code provides that:

Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that— ... such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution....

■ Under § 502(a), a proof of claim filed pursuant to § 501, entitled "Filing of proofs of claim or interests," is deemed allowed unless objected to by the debtor. An objection on § 502(e)(1)(B) grounds such as that made here triggers a hearing and ruling on the objection. A claim disallowed under this subsection may later be reconsidered under § 502(j) if the contingency is resolved.

On April 2 and 3, 1992, the Bankruptcy Court held a hearing on Drexel's objections to the multitude of claims for indemnification and contribution that had been filed in the Drexel bankruptcy. On April 17, 1992, the Bankruptcy Court disallowed all of these claims under § 502(e)(1)(B).

At the April 1992 hearing, the Bankruptcy Court ruled that both the ordinary usage of the words "reimbursement" and "contribution" found in the Code section quoted above and the legislative history of § 502(e)(1)(B) indicate that claims styled as "indemnification," are covered by that subsection. Sorenson's liability to the FDIC is not yet determined, no judgment has been entered thereon, and Sorenson has not yet paid anything to the FDIC.

### Analysis

The Bankruptcy Court's finding that § 502(e)(1)(B) is applicable to Sorenson's claim is a conclusion of law because it involves interpretation of the subsection. It is therefore subject to *de novo* review by this Court. *See In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988 (2d Cir.1990); *In re Pacor* 110 B.R. 686 (E.D.Pa.1990) (district court holds plenary power to review bankruptcy court's findings under § 502(e)(1)(B)).

Sorenson makes the following arguments on appeal:

—that as a result of the settlement Drexel does not have standing to object to Appellant's claim;

—that § 502(e)(1)(B) does not generally apply to contingent claims for indemnification and particularly does not apply to indemnification for attorney's fees;

---

1. "Claim Over" is defined in section 8.1 of the settlement agreement as "any claim against Drexel, the Plan Successor, DPI or any entity controlled by any of them by any Person, whether fixed or contingent, for indemnification, contribution, equitable apportionment or reimbursement of any kind arising as a result of a claim, cause of action or legal proceeding against such Person."

—that the subsection does not apply because the FDIC and Drexel have settled and therefore the language of the subsection requiring that the claimant be "liable with the debtor" on the claim does not apply to Sorenson's claim;

—that the Bankruptcy Court and Drexel's interpretation of § 502(e)(1)(B) may be unconstitutional because it involves discrimination between classes of contingent claims without any rational basis by disallowing contingent claims for indemnity even though in general contingent claims are allowable under § 101(5)(A) and § 502(c).

*Drexel has standing to object to appellant's claim as a party in interest.*

■■■ Appellant argues that the terms of the general settlement agreement between Drexel and the FDIC, providing that Drexel may subtract from its settlement payment to the FDIC any amount payable to Sorenson as an indemnification by reason of having been wrongly sued by the FDIC, disqualifies Drexel as a party in interest with standing under § 502(a) of the Bankruptcy Code to object in this case.[2]

However, as noted above, the express terms of Drexel's settlement agreement with the FDIC and other securities litigation claimants requires Drexel to object to any claim for indemnification. Drexel's exposure to liability to the FDIC under the doctrine of *respondeat superior* and to Sorenson under the provisions of its by-law provides it with standing to object to Sorenson's claims as a party in interest.

*§ 502(e)(1)(B) applies to contingent claims for indemnification.*

In *In re Wedtech Corp.*, 85 B.R. 285 (Bankr.S.D.N.Y.1988), two former officers and directors filed claims against the debtor for a potential liability judgment against them and for defense costs. The Court in *Wedtech* held that all contingent claims involving co-liability must be disallowed under § 502(e)(1)(B). The officers and directors were sued by shareholders, bond-

holders and noteholders of Wedtech following its bankruptcy on various grounds including embezzlement and fraud. Other actions were also brought against them. The former officers filed a claim for indemnification for costs they incurred in these actions, pursuant to a provision of Wedtech's by-laws requiring such indemnification. Wedtech objected to the claims on the basis of § 502(e)(1)(B). *Id.* at 287–88.

The *Wedtech* court applied a three-part test, based on the language of § 502(e)(1)(B), that courts consistently apply in determining whether the subsection applies to a claim:

[I]n order to come within § 502(e)(1)(B), (i) the claim must be one for reimbursement or contribution; (ii) the entity asserting the claim for reimbursement or contribution must be "liable with the debtor" on or have secured the claim of a creditor; and (iii) the claim must be contingent at the time of its allowance or disallowance.

85 B.R. at 289; *See also In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr.M.D.Fla.1987) (utilizing the three-part test). The court found the first element to be present in the former officers' claims because "the concept of reimbursement includes indemnity." *Wedtech*, 85 B.R. at 289. It found that the third element, the contingency element, was also easily satisfied because the underlying liability of the former officers had not yet been determined. *Id.*

On the subject of the second element of the test, the court stated that "the co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *Id.* at 290. The court thus examined the various claims asserted against the former officers in the underlying actions against them, and found the second element to be satisfied by most of the civil charges because they were claims on which Wedtech could be held

---

**2.** § 502(a) of the Bankruptcy Code states: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a *party in interest,* ... objects." (emphasis added).

jointly liable with the former officers or vicariously liable through them.[3] Thus, the court disallowed the former officers' proofs of claim under § 502(e)(1)(B) for all parts in which co-liability with the debtor was possible. *Id.* at 289–93.

A review of authorities in other jurisdictions reveals that it is well-established that contingent claims for indemnity are covered by § 502(e)(1)(B) where the claimant is co-liable with the debtor on the underlying claim. *See In re Charter Co.*, 862 F.2d 1500, 1502–03 (11th Cir.1989) (affirming the bankruptcy court's decision disallowing under § 502(e)(1)(B) proofs of claim filed by generators of toxic substances seeking reimbursement, contribution or indemnity from the debtor, who was involved in disposal of the substances); *In re Pettibone Corp.*, 110 B.R. 837, 848 (Bankr.N.D.Ill. 1990) (disallowing claim for indemnification by manufacturer of brake system with respect to potential liability from products' liability suit); *In re A & H, Inc.*, 122 B.R. 84 (Bankr.W.D.Wis.1990) (disallowing under § 502(e)(1)(B) claim filed by truck rental company against debtor lessee for indemnification with respect to rental company's potential liability resulting from lessee's truck accident); *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307 (Bankr. M.D.Fla.1987) (disallowing under § 502(e)(1)(B) claim filed by underwriter against debtor for indemnification or contribution with respect to underwriter's potential liability resulting from public offering of debtor's common stock).

In his papers, appellant acknowledges that *Wedtech* is authority against him. The cases cited by appellant as alternative authority are inapposite, since those cases neither involve objections to a proof of claim under § 502(e)(1)(B) nor even mention the subsection. *See In re New York Trap Rock Corp.*, 137 B.R. 568, 573 (Bankr. S.D.N.Y.1992) (holding a "contingent claim for indemnification constitutes a right to payment under 11 U.S.C. § 101(4)(A) [now § 101(5)(A) ]"); *In re Amfesco Indus., Inc.*, 81 B.R. 777, 781 (Bankr.E.D.N.Y.1988) (same). Neither of those cases support Appellant's argument that claims for indemnification are not included as claims for "reimbursement or contribution" under § 502(e)(1)(B). Instead, appellant's cases stand simply for the proposition that a contingent claim for indemnification is a right to payment and definable as a "claim" under § 101(5)(A) of the Bankruptcy Code. This proposition is not inconsistent with the debtor's position that such claims for indemnity are nevertheless disallowed upon objection under § 502(e)(1)(B) if the claimant is co-liable with the debtor on the underlying claim.[4] The fact that contingent claims are nevertheless "claims" under § 101(5)(A) does not mean that they cannot be disallowed under another specific subsection of the Code partly as a result of their contingency. Nor do appellant's claims qualify for estimation under the provisions of § 502(c), because § 502(e)(1)(B) expressly states that it applies "[n]otwithstanding subsections (a), (b), *and* (c) of this section..." (emphasis added).[5]

Appellant also argues that § 502(e)(1)(B) was intended solely to prevent identical claims from being brought against a debtor by a creditor and a party whose claim derives from that of the creditor. Appellant cites the legislative history of § 502(e)(1)(B) and a number of cases for this proposition. *See* S.Rep. No. 95–989,

---

**3.** The only charges against the former officers on which Wedtech could not be co-liable were the RICO charges and the allegations that the former officers had breached their fiduciary duties to Wedtech.

**4.** Subsection 101(5)(A) is in the "Definitions" section of the Bankruptcy Code and reads: " 'claim' means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

**5.** § 502(c) states that:

There shall be estimated for purposes of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

95th Cong., 2d Sess. 65 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5851; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6310 (stating the provision "prevents competition between a creditor and its guarantor for the limited proceeds in the estate."); *In re Allegheny Int'l, Inc.*, 126 B.R. 919, 923 (Bankr.W.D.Pa.1991), *aff'd without opinion*, 950 F.2d 721 (3d Cir.1991) ("Section 502(e)(1)(B) is not a means of immunizing debtors from contingent liability, but instead protects debtors from multiple liability on contingent debts."); *In re American Continental Corp.*, 119 B.R. 216, 217 (Bankr.D.Ariz.1990) (citing to legislative history).

Notwithstanding that interpretation, allowing appellant's claim for indemnity to stand alongside the FDIC's potential claim for *respondeat superior* would create the duplicative claims proscribed under the appellant's narrow reading of § 502(e)(1)(B). Disallowance of appellant's claim is thus required even under appellant's questionable limitation of the subsection.

*Wedtech* and a number of other courts have viewed § 502(e)(1)(B) as having purposes that reach beyond the risk to the debtor of double liability and are directed at the difficulty of administering and distributing the debtor's estate while ongoing contingent claims of the type covered by § 502(e)(1)(B) still exist. While noting that the legislative history pointed to the avoidance of competition purpose of the subsection, the *Wedtech* court found that the language of the subsection itself

> indicates that the purpose of disallowing contingent indemnity and contribution claims is precisely because they are so contingent ... Congress apparently sought to achieve the administrative purpose of enabling distribution to unsecured creditors without a reserve for these types of contingent claims when the contingency may not occur until after the several years it often takes to litigate the underlying lawsuit.

85 B.R. at 290. Likewise, in *In re Charter*, the Eleventh Circuit stated that § 502(e)(1)(B):

> epitomizes a considered Congressional policy that underlies the Bankruptcy Code as a whole, and Chapter 11 in particular: that is, the bankrupt's estate should not be burdened by estimated claims contingent in nature. Rather, the debtor should be expeditiously rehabilitated and reorganized, thereby providing the bankrupt a fresh start, while simultaneously according fair treatment to creditors by paying ascertainable claims as quickly as possible.

862 F.2d at 1502. *See also, e.g., In re A & H, Inc.*, 122 B.R. 84 (Bankr.W.D.Wis.1990); *In re Isaac*, 1990 WL 99305 (E.D.Pa.1990). These additional considerations further militate against the allowance of appellant's contingent claims.

*Appellant's claim for defense costs does not fall outside § 502(e)(1)(B).*

■ Appellant also argues that even if claims for indemnification may be disallowed under § 502(e)(1)(B), the part of his proof of claim seeking indemnification for defense costs lies outside the subsection because it does not seek reimbursement for payment of an obligation jointly owed by the claimant and the debtor to a third party; the FDIC has no claim against Drexel for appellant's defense costs.

Appellant's claim for defense costs arises out of the underlying lawsuit against the claimant, and the debtor's liability for these defense costs is contingent on findings of good faith that must be made in the underlying lawsuit. Appellant's attempt to segregate these cost-related claims from the underlying indemnity claims on the basis of co-liability ignores the fact that they are simply different facets of the same unified whole. The interdependence between appellant's defense costs and the underlying action for indemnification places all of appellant's claims under the umbrella of § 502(e)(1)(B), and thus all claims are disallowed under that subsection. The court in *Wedtech* made a similar finding in disallowing an identical claim for reimbursement of attorneys' fees made by the claimants in that case. 85 B.R. at 288–290.

98

*Applying § 502(e)(1)(B) to claims for indemnification is not unconstitutional.*

Appellant argues that interpreting § 502(e)(1)(B) to disallow its claim for indemnification violates the Equal Protection Clause of the Constitution. Appellant claims that disallowing contingent claims for indemnification under § 502(e)(1)(B) while generally allowing other kinds of contingent claims, discriminates against claims for indemnification without a rational basis.

 The Equal Protection Clause is implicated only where classes of similarly situated persons are treated dissimilarly, *see Johnson v. Robison*, 415 U.S. 361, 374–375, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974), and "does not mean that the government may never draw lines in the creation and application of laws that treat one class of individuals or entities differently." *In re Axona Int'l Credit & Commerce Ltd.*, 88 B.R. 597, 616 (Bankr.S.D.N.Y.1988) (citing authorities), *aff'd*, 115 B.R. 442 (S.D.N.Y. 1990).

Section 502(e)(1)(B) treats all holders of contingent claims for reimbursement involving co-liability alike, and they are treated differently from holders of direct contingent claims because the two classes of claims are inherently different and permit different treatment. Improving the debtor's prospects for reorganization by disallowing claims for indemnity provides a rational basis to permit disparate treatment between indemnity claims and other types of contingent claims. *See In re Shumaker*, 124 B.R. 820, 827 (Bankr.D.Mont.1991) (rationale that bankruptcy petitioners are entitled to a "fresh start" defeats equal protection challenge). This rational basis places the Bankruptcy Court's disallowance of appellant's claims in compliance with the requirements of the Equal Protection Clause.

Accordingly, the Bankruptcy Court's disallowance of appellant's claims under § 502(e)(1)(B) are AFFIRMED.