**In re FUEL BARONS, INC., d/b/a Ozofire and Surefire, Debtor.**

No. 12–51650–MGD.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Feb. 7, 2013.

the minimum pleading requirements of Rule 8(a) or Rule 9(b).

Michael J. Bargar, Stuart F. Clayton, Jr., Gregory D. Ellis, Christopher D. Phillips, Lamberth, Cifelli, Stokes, Ellis & Nason, Atlanta, GA, for Debtor.

Vivieon E. Kelley, Office of the United States Trustee, Atlanta, GA, U.S. Trustee.

### ORDER

MARY GRACE DIEHL, Bankruptcy Judge.

The above-styled Chapter 11 case is before the Court on Debtor's Objections to Claims filed by the following Claimants: Bed, Bath & Beyond, Inc. ("BBB") (Dock-

et No. 283, relating to Proof of Claim No. 7), Hyams Landscape Contractors ("Hyams") (Docket No. 288, relating to Proof of Claim No. 156), Essential Ingredients, Inc. ("EI") (Docket No. 291, relating to Proof of Claim No. 161), The Fresh Market ("FM") (Docket No. 294, relating to Proof of Claim No. 52). All of the Claimants filed Responses to the Objections ("Responses"). (Docket Nos. 314, 318, 315, 313). Debtor filed a Reply in Support of the Objections ("Reply"). (Docket No. 322). An evidentiary hearing was held on the matter on November 16, 2012 ("Hearing"). After hearing the arguments of counsel, the Court took the matter under advisement. On November 23, 2012, Debtor filed a post-hearing Brief in Support of the Objections. (Docket No. 347).

## FACTS

In 2009, Debtor began developing a fuel gel designed to be used in firepots and/or firelights. Several fires occurred involving these products, resulting in various individuals having claims for personal injury. Numerous lawsuits were filed in various state courts, naming as defendants Debtor and/or other vendors and suppliers of Debtor's products, including the Claimants. Other than the exceptions detailed below, the claims at issue are for indemnification for defense costs associated with the underlying lawsuits.

Of these lawsuits, the only one alleged to have been adjudicated or settled was a lawsuit against BBB, which settled for $129,700.00, and for which BBB incurred defense costs of $539,321.00. BBB asserts a claim for the incurred defense costs and also for an unspecified amount of defense costs related to other pending lawsuits, which BBB stated at the Hearing were based on Texas law. EI asserts a claim for an unspecified amount of defense costs related to pending lawsuits. These lawsuits are based on Texas law, and lawsuits have been filed in Mississippi, North Carolina, South Carolina, Georgia, and Kentucky. Hyams asserts a claim for $23,927.73 in defense costs related to a pending lawsuit based on South Carolina law. FM asserts a claim of $398,909.69 for defense costs relating to pending lawsuits based on South Carolina law.[1] FM also asserted a $17,373 claim for costs of inventory recall.

On August 14, 2012, the Court entered an Order approving a settlement agreement between Debtor and its insurance carrier, Great American E & S Insurance Company ("GAESIC"), in which GAESIC agreed to pay $7,000,000.00 to the bankruptcy estate for distribution to certain of the parties injured by the fuel gel products. (Docket No. 189). On October 12, 2012, the Court entered an Order approving all fourteen proposed settlements among Debtor and the known injured parties whose claims were covered by GAESIC. (Docket No. 297).

The Objections seek to disallow claims pursuant to 11 U.S.C. § 502(e)(1)(B). Claimants respond that § 502(e)(1)(B) is inapplicable because there is no co-liability for the defense costs and because the claims are not contingent.

## DISCUSSION

 Three elements must be satisfied for a claim to be disallowed pursuant to 11 U.S.C. § 502(e)(1)(B): (1) the claim must be contingent; (2) the claim must be for

---

1. The Claimants initially also asserted claims for indemnification resulting from damages relating to liability in the underlying lawsuits. However, at the Hearing, the Claimants stated that they were no longer seeking to recover on claims for indemnification other than the related defense costs.

reimbursement or contribution; and (3) the debtor and the claimant must be co-liable on the claim. The burden of proof to show that all three elements of § 502(e)(1)(B) are met is on the objecting party, here, the Debtor. *In re RNI Wind Down Corp.*, 369 B.R. 174, 181 (Bankr. D.Del.2007). The parties do not dispute that the second element is met, and the Court notes that it is well settled that "the concept of reimbursement includes indemnity." *In re Alper Holdings USA*, 2008 WL 4186333, at *5 (Bankr.S.D.N.Y. Sept. 10, 2008) (quoting *In re Wedtech Corp.*, 85 B.R. 285, 289 (Bankr.S.D.N.Y.1988)).

Section 502(e)(1)(B) serves two primary purposes. First, it prevents double recovery on the same claim, which furthers the Bankruptcy Code policy of equitable distribution among like creditors. *In re Touch America Holdings, Inc.* 381 B.R. 95, 109 (Bankr.D.Del.2008). Second, it enables a bankruptcy case to proceed with a distribution to unsecured creditors without having to wait for the resolution of the contingency. *In re Wedtech Corp.*, 85 B.R. 285, 290 (Bankr.S.D.N.Y.1988); *see also Syntex Corp. v. Charter Co. (In re Charter Co.)*, 862 F.2d 1500, 1502–03 (11th Cir.1989) ("[T]he bankrupt's estate should not be burdened by estimated claims contingent in nature.").

FM's lost inventory claim is a direct claim against Debtor and it is therefore not seeking contribution. Nor is this claim one for which FM and Debtor are co-liable. FM has already incurred the loss, and therefore, the claim is also not contingent. FM's claim for lost inventory will not be disallowed under 11 U.S.C. § 502(e)(1)(B). This determination is without prejudice to any other grounds for objection to the claim which Debtor may assert.

## A. Co-liability

### 1. Debtor is Co-liable on the Indemnification Claims

Because the claims at issue—claims for defense costs—are derivative of the indemnification claims, the Court will first address the existence of co-liability for the indemnification claims and whether this co-liability is broad enough to include the claims for defense costs. For the reasons that follow, the Court agrees with the line of cases finding co-liability for indemnification claims.

First, the plain language of the statute supports a broad interpretation of co-liability. Section 502(e)(1)(B) states that the Court "should disallow *any* claim for reimbursement or contribution of an entity that is liable with the debtor on . . . the claim of a creditor (emphasis added)." Based on the plain language of the statute, Claimants' claims satisfy this requirement. The statute does not require that the claims must be based on the same legal theory or that the claimant and debtor must be subject to a common legal proceeding. As stated in *Drexel III*, " 'an entity that is liable with the debtor' is broad enough to encompass any type of liability shared with the debtor, whatever its basis." *In re Drexel Burnham Lambert Group Inc. (Drexel III)*, 148 B.R. 982, 986 (Bankr.S.D.N.Y.1992) (quoting *In re Baldwin–United Corp.*, 55 B.R. 885, 890 (Bankr.S.D.Ohio 1985)). Thus, it does not matter that the underlying lawsuits seek recovery for personal injuries and related claims, while Claimants' claims are for defense costs related to indemnification. Co-liability exists where "the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *In re Alper*, 2008 WL 4186333, at *6 (quoting *In re GCO, LLC*, 324 B.R. 459, 465 (Bankr. S.D.N.Y.2005)). The indemnification

claims stem from third-party claims against Debtor and Claimants. Debtor could be a defendant in the third-parties' lawsuits but for the automatic stay.

### 2. Debtor's Co-liability Encompasses Defense Costs

 Several courts have held that co-liability is a broad enough concept to include defense costs relating to the underlying lawsuit. *In re Drexel Burnham Lambert Group, Inc. (Drexel II)*, 146 B.R. 92, 97 (S.D.N.Y.1992). This is because the defense costs are "inextricably associated with and contingent upon" the underlying lawsuit. *In re Alper*, 2008 WL 4186333, at *7. If there is co-liability on the underlying claim, then any claims sought on account of the underlying suit are within § 502(e)(1)(B)'s umbrella. *Drexel II*, 146 B.R. at 97.

On the other hand, some courts take a more literal approach to interpreting the statute and read the co-liability prong narrowly. In *In re RNI Wind Down*, the Court found that a debtor's former officer's claim for advancement and indemnification of defense costs would not be disallowed because the debtor and the officer could only be co-liable on the underlying claims, and not on the defense costs associated with the claims. *In re RNI Wind Down Corp.*, 369 B.R. at 188–91. The Court opined that the expansive interpretation of § 502(e)(1)(B) ignored the plain meaning of the statute and the "fundamental distinction between indemnification for damages and indemnification and advancement for defense costs." *Id.* at 189. Furthermore, the Court noted that in *Drexel III*, in finding co-liability for defense costs, that Court confused the issues of reimbursement and co-liability, relying on a finding that a claim was for reimbursement to support a finding that the debtor was co-liable. *Id.* at 190 (discussing *Drex-*

*el III*, 148 B.R. 982). The Court also noted that the policy behind § 502(e)(1)(B) was not implicated because there was no risk of double payment on the officer's defense costs. *Id.; see also In re Vectrix Bus. Solutions, Inc.*, 2005 WL 3244199, at *4 (Bankr.N.D.Tex. Sept. 1, 2005) (distinguishing between indemnification for liability and for defense costs).

This Court finds more persuasive the broad interpretation of co-liability. Whether a Claimant ultimately has an indemnification claim against Debtor will depend upon the co-liability of Claimant and Debtor. Any claim to recover defense costs would likewise be premised on Debtor's co-liability, *i.e.* if Debtor is not co-liable on the underlying claim then Claimant will have no claim against Debtor for defense costs. Although a claim for defense costs is derivative of the underlying claim, it depends upon Debtor's co-liability for its very existence. Therefore, distinguishing between a claim for damages and a derivative claim for defense costs is an inappropriately rigid interpretation of the meaning of co-liability. As stated in *Drexel II*, "[t]he interdependence between [claimant's] defense costs and the underlying action for indemnification places all of [claimant's] claims under the umbrella of § 502(e)(1)(B). . . ." *Drexel II*, 146 B.R. at 97.

### B. Contingent Claims

 In the context of § 502(e)(1)(B), a claim is contingent "if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event." *In re Alper*, 2008 WL 4186333, at *5. "The determination of whether the claim is contingent is made at the time of the allowance or disallowance of the claim, which courts have established is the date of the ruling." *Id.* The Court recognizes that merely because

a claim is unliquidated or disputed does not mean that it is contingent and further, that in other contexts, bankruptcy courts have stated that a claim is contingent if liability depends upon the occurrence of an "extrinsic event." *E.g. In re Taylor & Assocs., L.P.,* 193 B.R. 465, 472 (Bankr. E.D.Tenn.1996).

▆▆▆ BBB's $539,321.61 claim for defense costs incurred is not contingent because there is no future event that will trigger a legal duty to pay this claim—this claim is both liquidated and noncontingent. *See In re Alper,* 2008 WL 4186333, at *6 (holding that incurred defense costs for which the debtor was obligated to indemnify under the purchase agreement were not contingent). It is therefore not disallowable under § 502(e)(1)(B).

▆▆▆ The remaining claims for unincurred defense costs—those of Hyams, EI, FM, and BBB—are associated with noncontractual indemnification claims based on state laws, for which liability has not yet been established. The Court finds that these claims are contingent. Dealing with a claim for indemnification of a corporation's officers and directors, the Court in *In re Touch Am. Holdings* stated that usually an indemnification claim will be contingent until the underlying litigation is resolved because the indemnitee's right is

> "typically subject to a requirement that the indemnitee [has] acted in good faith and in a manner that he reasonably believed was in the best interest of the company. As a result, an indemnification dispute generally cannot be resolved until after the merits of the underlying controversy are decided because the good faith standard requires a factual inquiry into the events that gave rise to the lawsuit."

*In re Touch Am. Holdings,* 381 B.R. at 108 (citing *In re RNI Wind Down,* 369 B.R. at 185–6). Although dissimilar facts were involved in *In re Touch Am. Holdings,* the reasoning is somewhat analogous to that employed by this Court. In *In re Touch Am. Holdings,* the reason for the claim not being contingent was not simply because liability was undetermined; rather, the claim was contingent because it did not arise until the good faith standard was satisfied. Here, the indemnification claims and the derivative defense costs are contingent until the claimant's underlying liability has been determined. Only then will a state law indemnification claim be rendered non-contingent for purposes of § 502(e)(1)(B).

An analysis of the applicable state laws demonstrates this conclusion and also shows that whether the states' laws provide for indemnification will depend not only upon a finding of liability but may also vary depending upon a variety of factors which have yet to be determined. Such factors may include the theory of recovery advanced, the degree of fault required, how joint tortfeasors are treated, what damages are necessary, and if negligence is alleged, whether pure, comparative, or contributory negligence principles apply—all these questions remain unresolved at this time.

The claims are based on the law of the following states: Texas, South Carolina, Mississippi, North Carolina, Georgia, Kentucky, and Florida. In addition to common law theories of noncontractual indemnification, some states have enacted relevant statutes, dealing with products liability cases. Because the Court is not familiar with the precise claims being made in every pending or potential lawsuit underpinning the claims before the Court, the Court has conducted an analysis of the potentially relevant common law and statutory provisions.

Under the common law of each of these states, a non-contractual claim for indemnification is contingent until liability is proven. *See F & F Ranch v. Occidental Chem. Corp.*, 2011 WL 1123402 (Tex.App. Mar. 29, 2011); *Vermeer Carolina's Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 63–4, 518 S.E.2d 301 (S.C.Ct.App.1999); *J.B. Hunt Transp., Inc. v. Forrest Gen. Hosp.*, 34 So.3d 1171, 1174 (Miss.2010); *Saiia Const., LLC v. Terracon Consultants, Inc.*, 310 Ga.App. 713, 716, 714 S.E.2d 3 (2011), *reconsideration denied* (July 12, 2011); *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky.2000); *York v. Petzl Am., Inc.*, 353 S.W.3d 349, 354 (Ky.Ct.App.2010); *Greene v. Charlotte Chemical Labs., Inc.*, 254 N.C. 680, 690, 120 S.E.2d 82 (N.C.1961). In some states, additional elements beyond a finding of liability are required to state a claim for indemnification.[2] In several states, if the parties are joint tortfeasors, then there is no right to indemnity. *McClure v. Fruehauf Corp.*, 302 S.C. 364, 370, 396 S.E.2d 354 (1990); *F & F Ranch v. Occidental Chem. Corp.*, 2011 WL 1123402, at *3; *J.B. Hunt Transp., Inc. v. Forrest Gen. Hosp.*, 34 So.3d at 1174. Therefore, a court would first need to determine that a claimant is not a joint tortfeasor before the claimant would be entitled to indemnity.

Several of the states also have products liability statutes that provide for indemnification claims. An analysis of these statutes[3] also shows that these indemnification claims and the related defense costs are contingent until liability is determined, or alternatively, an indemnification claim may not exist.[4] Tex. Civ. Prac. & Rem. Code § 82.001(2) (West 2011); Miss.Code Ann. § 11–1–63 (West); Ky.Rev.Stat. Ann. § 411.340 (West); *York v. Petzl Am., Inc.*, 353 S.W.3d 349, 354 (Ky.Ct.App.2010) (stating that in a products liability case that there can be no indemnity without liability).

It is clear that if the indemnification claim is contingent, then a related claim for defense costs is also contingent. Nonetheless, several of the states have case law demonstrating that liability must be determined before the the a claim for defense costs will be noncontingent. *See Addy v. Bolton*, 257 S.C. 28, 33, 183 S.E.2d 708 (1971); *Central Consol., Inc. v. Robertshaw Controls Co.*, 868 S.W.2d 910, 912 (Tex.App.1994); *Bush v. City of Laurel*, 215 So.2d 256, 260 (Miss.1968); *Piedmont Equipment Co., Inc. v. Eberhard Mfg. Co.*, 99 Nev. 523, 529, 665 P.2d 256 (1983).

Lastly, while preventing double payment is a purpose of § 502(e)(1)(B), it is not the only purpose. The statute also

epitomizes a considered Congressional policy that underlies the Bankruptcy Code as a whole, and Chapter 11 in

---

2. For example, in South Carolina, the indemnitee must prove 1) the indemnitor was liable for plaintiff's damages, 2) the indemnitee was exonerated from any liability for those damages, and 3) the indemnitee suffered damages as a result. *Vermeer Carolina's Inc. v. Wood/Chuck/Chipper Corp.*, 336 S.C. at 63–4, 518 S.E.2d 301.

3. Georgia's products liability statute is irrelevant here because it provides for strict liability for the *manufacturer* of personal property. O.C.G.A. § 51–1–11(b)(1). Since the claimants were not manufacturers, they could not be liable under this statute and would thus have no claim for indemnification.

4. In South Carolina, a seller of a defective product will be held strictly liable for resulting physical harm. S.C.Code Ann. § 15–73–10. There is no common law indemnification among joint tortfeasors in strict liability under this statute. *McClure v. Fruehauf Corp.*, 302 S.C. at 370, 396 S.E.2d 354. Thus, even if a Claimant was found liable in the underlying lawsuit under this statute, it would have no claim for indemnification against Debtor as a joint tortfeasor.

particular: that is, the bankrupt's estate should not be burdened by estimated claims contingent in nature. Rather, the debtor should be expeditiously rehabilitated and reorganized, thereby providing the bankrupt a fresh start, while simultaneously according fair treatment to creditors by paying ascertainable claims as quickly as possible.

*In re Alper,* 2008 WL 4186333, at *7 (quoting *In re Charter Co.,* 862 F.2d at 1502). As discussed above, the defense costs are contingent. The underlying lawsuits could take years to resolve, impeding Debtor's expeditious progression in its Chapter 11 case. Therefore, this purpose of § 502(e)(1)(B) is satisfied by disallowing claims for defense costs.

The Court finds that the noncontractual claims for indemnification are contingent, are based on debts for which Claimants and Debtor are co-liable, and are claims for reimbursement or contribution within the meaning of the statute. Because all three prongs of § 502(e)(1)(B) are met, the claims not already disposed of in this Order will be disallowed. Accordingly, it is

**ORDERED** that Debtors' Objections to Claims are hereby **GRANTED** in part and the claims are **DISALLOWED** to the following extent: Proof of Claim No. 156 is disallowed in its entirety; Proof of Claim No. 161 is disallowed in its entirety; Proof of Claim No. 52 is disallowed to the extent that it is not a claim for lost inventory; Proof of Claim No. 7 is disallowed to the extent that it is not for defense costs relating to a previously adjudicated or settled claim.

The Clerk shall serve a copy of this Order upon Debtor, counsel for Debtor, Claimants, counsel for Claimants, and the U.S. Trustee.