# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-02111-SCT

*J. B. HUNT TRANSPORT, INC.*

*v.*

*FORREST GENERAL HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/26/2008 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MORTON W. SMITH |
| | DAVID C. DUNBAR |
| ATTORNEYS FOR APPELLEE: | R. MARK HODGES |
| | KIMBERLY N. HOWLAND |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 05/20/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.    J.B. Hunt Transport, Inc. ("J.B. Hunt") filed suit against George E. McGee, M.D., and Forrest General Hospital ("FGH") asserting claims of negligence, medical malpractice, and common-law indemnity arising from the treatment of Melissa Hall, who was injured in an automobile accident by a tractor-trailer owned and operated by J.B. Hunt.[1]   J.B. Hunt negotiated a settlement with Hall's estate and wrongful-death beneficiaries before filing the

_____

[1]Dr. McGee was subsequently dismissed.

instant action. The trial court granted FGH's motion to dismiss, and J.B. Hunt appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On March 8, 2006, Melissa Hall was seriously injured in a motor-vehicle accident involving a tractor-trailer operated by J.B. Hunt. Hall was transported by ambulance to the emergency room at Forrest General Hospital, where she was diagnosed with a closed head injury, as well as other injuries. Hall subsequently was admitted to the intensive-care unit.

¶3. On March 11, doctors attempted unsuccessfully to wean Hall from a ventilator. On March 14, a spontaneous breathing trial proved unsuccessful, and Hall remained dependent on sedation and a ventilator.

¶4. On the morning of March 16, Hall underwent a tracheostomy to provide long-term access for the breathing tube utilized by the ventilator. However, no order was given that the tracheostomy tube be suctioned periodically. Over the next twelve hours, the tube was suctioned only twice, despite several notations that Hall had developed a severe, productive cough after insertion of the tube. At 10:00 p.m., having gone seven and one-half hours since the tube was last suctioned, Hall began coughing while being bathed by a nurse, dislodging the tube. Attempts to suction and reinsert the tube were unsuccessful, and Hall went into cardiopulmonary arrest. After failed attempts to resuscitate her, she was pronounced dead at 10:22 p.m.

¶5. After entering into a settlement agreement with Hall's estate and wrongful-death

beneficiaries, J.B. Hunt filed the action at issue in this case, asserting claims of negligence, medical malpractice, and common-law indemnity, and averring that "the wrongful death of Melissa Hall arose distinctly and exclusively as a result of the conduct of the Defendants and not from any actions or omissions of Hunt." J.B. Hunt further asserted that it was "forced to pay as a matter of law and under duress a significant sum for the damages caused by the Defendants and did so as a result of formal claims by counsel for [Hall's] family." Finally, J.B. Hunt asserted that it had "an implied or common law indemnity claim under Mississippi law against the Defendants and, therefore, [had] standing to bring [the] action." J.B. Hunt sought damages as follows:

> As a direct and proximate result of the Defendants' conduct, Plaintiff has paid additional consideration and is entitled to recover from the Defendants the value attributable to the following:
>
> a. Melissa's additional pain and suffering on March 16, 2006, preceding her death;
>
> b. Melissa's mental anguish on March 16, 2006, preceding her death;
>
> c. Melissa's resulting medical expenses associated with the code and her death;
>
> d. Melissa's funeral and burial expenses;
>
> e. Melissa's life expectancy and loss of enjoyment of life;
>
> f. Melissa's wrongful death; and
>
> g. All elements of damage permitted by law and available under the Mississippi Code Annotated of 1972, as amended.

3

¶6.    FGH moved to dismiss the complaint for failure to state a claim pursuant to Mississippi Rule of Civil Procedure 12(b)(6). The trial court granted the motion, finding that J.B. Hunt did not have standing to bring the action "based solely on its indemnity claim," as "'a claim for indemnity does not arise until there is legal liability to pay a judgment in favor of [the plaintiff.]'" (quoting *Mississippi Transp. Comm'n v. Jenkins*, 699 So. 2d 597 (Miss. 1997)). The trial court further held that J.B. Hunt was not a beneficiary under the wrongful-death statute and, as such, "lacked standing to bring the claim upon which any right of indemnification depends . . . . "

¶7.    From this judgment, J.B. Hunt appeals, asserting: (1) that the trial court erred when it found that J.B. Hunt did not have standing to bring a common-law indemnity suit against FGH, and (2) that the trial court erred when it found that J.B. Hunt sought indemnity for severed aspects of a wrongful-death claim. Finding the first issue dispositive, we decline to address the second issue.

**ANALYSIS**

¶8.    This Court employs a de novo standard when reviewing a motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure. *Rose v. Tullos*, 994 So. 2d 734, 737 (Miss. 2008) (citing *Cook v. Brown*, 909 So. 2d 1075, 1077-78 (Miss. 2005)). Such a motion for failure to state a claim challenges the legal sufficiency of the complaint. *Id.* In order to affirm an order granting dismissal on a Rule 12(b)(6) motion, "[t]he allegations in the complaint must be taken as true, and there must be no set of facts that would allow the plaintiff to prevail." *Wilbourn v. Equitable Life Assurance Soc'y of the U.S.*, 998 So. 2d

4

430, 435 (Miss. 2008) (citing **Ralph Walker, Inc., v. Gallagher**, 926 So. 2d 890, 893 (Miss. 2006)).

¶9. The question presented by this appeal is whether J.B. Hunt, a negligent tortfeasor in a motor-vehicle accident which resulted in serious injuries to Melissa Hall, can seek indemnity from a health-care provider (FGH) whose subsequent negligent medical treatment of Hall, according to the allegations of the Complaint, caused Hall's death. We hold that, under the facts before us, an action for indemnity may not be brought and affirm the trial court's dismissal.

¶10. This Court has set forth the basis for a claim of indemnity as follows:

An obligation to indemnify may arise from a contractual relation, from an implied contractual relation or out of liability imposed by law. When one person is required to pay money which another person in all fairness should pay, then the former may recover indemnity from the latter in the amount which he paid, provided the person making the payment *has not conducted himself in a wrongful manner so as to bar his recovery*.

**Bush v. City of Laurel**, 215 So. 2d 256, 259-60 (Miss. 1968) (emphasis added).

¶11. Further, this Court has said that:

Two critical prerequisites are generally necessary for the invocation of noncontractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) *it must appear that the claimant did not actively or affirmatively participate in the wrong*.

**Home Ins. Co. v. Atlas Tank Mfg. Co.**, 230 So. 2d 549, 551 (Miss. 1970) (emphasis added).

¶12. American Jurisprudence states the rule succinctly:

It should be noted that as a general rule, in the absence of an express contractual or statutory right to indemnity, a party may bring an action for

5

common-law indemnification only if he or she is without fault. Common-law indemnity is not a fault-sharing mechanism . . . . *One who is him or herself at fault is not due indemnity,* because liability for indemnity exists only when the party seeking indemnity, the indemnitee, is free of fault and has discharged a debt that should be paid wholly by the indemnitor.

41 Am. Jur. 2d *Indemnity* § 21 (2005) (emphasis added).

¶13.    FGH argues that J.B. Hunt is a joint tortfeasor, and as such is not entitled to indemnity as there is "no right of indemnity between joint tortfeasors . . . . The implied common law indemnity cause of action provides a narrow exception to this rule, allowing a joint tortfeasor to recover from another joint tortfeasor if the tortfeasor asserting indemnity was not guilty of any active negligence . . . "

¶14.    J.B. Hunt responds by admitting its original negligence, but argues:

It is admitted that Hunt was actively negligent at the time of the accident, in that Hunt's driver caused the accident and injured Ms. Hall. However, Hunt's negligence was too far removed in time from the death of Ms. Hall, to have still been actively negligent at the time Ms. Hall died. Further, Hall had continually improved medically and was making a recovery. The medical evidence, as submitted at the trial court level and which must be taken as true, shows clearly that Ms. Hall would have survived with only mild to moderate disability, but for the separate negligent acts of FGH causing Hall's sudden death. These facts . . . show that Hunt's negligence was remote enough to have become passive negligence at the time of FGH's negligent actions.

¶15.    J.B. Hunt's liability stems from its admitted negligent acts, which resulted in serious injuries to Hall, forcing her to seek medical care and hospitalization. Obviously Hunt did not participate in the medical care and treatment of Hall, but it was responsible for the event which caused her to seek medical treatment at FGH. We reject Hunt's argument that it was guilty of only "passive negligence" in the death of Hall. In our opinion, the facts of this case

6

could not support a finding that J. B. Hunt was "free of fault" or that it did not "actively or affirmatively participate in the wrong."

¶16. We find no authority in this state, nor does J.B. Hunt provide us with any, which would provide rights of indemnity in favor of an actively negligent tortfeasor. To the contrary, the cases in this state that have considered indemnity between tortfeasors have allowed recovery only when one party is liable merely "because of passive negligence in failing to remedy the defect or because of a non-delegable statutory duty." **Bush v. City of Laurel**, 215 So. 2d 256, 260 (Miss. 1968) (allowed indemnity because the City was liable only for passive negligence); **Long Term Care, Inc. v. Jesco, Inc.**, 560 So. 2d 717 (Miss. 1990) (denied indemnity because Long Term Care was actively negligent).

¶17. Moreover, while J. B. Hunt maintains that its cause of action is for indemnity, this is in fact an effort to recover contribution from a successive or subsequent tortfeasor. "It must be remembered that indemnity is an all or nothing proposition damage-wise, and hence should be an all or nothing proposition fault-wise. Apportionment of damages is not contemplated by it. That is the function of contribution." **Transcon Lines v. Barnes**, 498 P.2d 502, 509 (Ariz. Ct. App. 1972). Recovery under these circumstances has not been adopted in this state either by statute or by decision of this Court. *See* Miss Code Ann. § 85-5-7(4) (Rev. 1999) (providing for contribution only among joint tortfeasors who act in concert, not among successive and distinct tortfeasors).

7

## CONCLUSION

¶18.    Based on the foregoing analysis, we find that the trial court did not err in granting

Forrest General's motion to dismiss.  Therefore, we affirm dismissal of the complaint by the

trial court.

¶19.    **AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**