# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01282-COA

**PREMIER ENTERTAINMENT BILOXI, LLC**                    **APPELLANT**
**D/B/A HARD ROCK HOTEL & CASINO**

**v.**

**P.T.E. SYSTEMS INTERNATIONAL, LLC**                    **APPELLEE**

DATE OF JUDGMENT:                08/29/2016
TRIAL JUDGE:                     HON. ROGER T. CLARK
COURT FROM WHICH APPEALED:       HARRISON COUNTY CIRCUIT COURT,
                                 SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:         JAMES JOSEPH CRONGEYER JR.
                                 MICHAEL W. ULMER
ATTORNEY FOR APPELLEE:           THOMAS LYNN CARPENTER JR.
NATURE OF THE CASE:              CIVIL - CONTRACT
DISPOSITION:                     REVERSED AND REMANDED - 09/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.

### BARNES, J., FOR THE COURT:

¶1.     After several post-tension cables failed during construction of the Hard Rock Hotel and Casino, the general contractor, Roy Anderson Corporation (Anderson), submitted a claim for costs associated with the cable failure to the insurance company for Premier Entertainment Biloxi LLC d/b/a/ Hard Rock Hotel & Casino (Premier). Having failed to receive reimbursement, Anderson filed an action for breach of contract against Premier in Harrison County Circuit Court, Second Judicial District. The action alleged that Premier was contractually required to purchase and maintain a builder's "all-risk" insurance and was liable for costs not covered by insurance. Anderson sought over a million dollars in damages

and costs attributable to the cable failure. Premier denied liability, and filed a third-party action against P.T.E. Systems International, LLC (PTE), the cable supplier, asserting claims of common-law indemnity, breach of implied warranty of merchantability, breach of implied warranty of fitness, products liability, and breach of express warranty. PTE filed a motion to dismiss, which the circuit court granted, concluding there existed no "implied contractual indemnity" against PTE for Anderson's claims. On appeal, we find the court erred in granting PTE's motion to dismiss.

**FACTS AND PROCEDURAL HISTORY**

¶2. Premier and Anderson entered into a contract, which provided that materials for the Hard Rock construction project would be purchased under an "owner direct purchase program" that exempted Premier from a 3.5% contractor's tax.[1] Although Premier purchased the construction materials, Anderson selected, utilized, and installed the materials. Under the general provisions of the contract, Premier agreed to purchase and maintain a builder's "all-risk" insurance policy and to be liable for losses "not fully compensated by insurance." "Section 11.3.1 - Property Insurance" provided:

> The Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others,

---

[1] Financing for materials was provided by the Mississippi Development Finance Corporation Industrial Development Revenue Bonds, which is customary when a project would have "significant economic impact."

comprising total value for the entire Project at the site on a replacement costs basis without optional deductibles. . . . It is understood and agreed that Owner is bearing all risk of loss to the property for which Owner has an insurable or financial interest during construction, and in the event of a loss during construction[,] Owner agrees to look solely to the proceeds of the Builder's Risk Insurance which Owner has agreed to furnish. . . . If Contractor is damaged by the failure or neglect of Owner to purchase or maintain insurance as described above, without so notifying Contractor in writing, then Owner shall bear all reasonable costs properly attributable thereto.

As regards any loss or damage which is of a type covered by insurance actually obtained by the Owner or which would have been covered by insurance that the Owner could have but failed to obtain, the Owner shall be liable to the Contractor to the extent such loss is not fully compensated by insurance, whether as a result of policy deductibles, exclusions, lapse of coverage, gaps in coverage, coverage limits, inadequacy of coverage, or other reason which causes the loss to be uninsured, in whole or in part.

¶3.    During construction in 2013, at least eighteen PTE 270 KSI post-tensioned cables failed below the rated and specified strength of the cables, resulting in repair costs of $1,629,977.[2] Anderson notified Premier of the cable-breaking incidents on August 23, 2013, and later provided a statement of property loss and damages.  On January 30, 2015, Anderson sent Premier a letter asserting a claim on the builder's risk insurance for "losses and damages related to the Broken Post Tension Cables[.]"  On February 27, 2015, Anderson submitted a claim to Integro Insurance Brokers, requesting reimbursement of $1,629,977 for the "direct

_____

[2] According to Premier, the cables "were rated for and supposed to withstand up to 80% of 270,000 pounds per square inch of load when stretched or elongated."  The cables "failed during or after stressing at loads at or below 80% (33,000) of the 41,300 breaking strength."  The costs attributed to the cable failure included:  (1) costs to repair the cables; (2) damages incurred by delays caused by cables breaking; (3) extended general conditions; (4) clean-up costs; (5) increase in punch-list work; and (6) additional painting and work costs.

physical loss and damage to property" as a result of the failed post-tension cables.[3] The insurance adjuster, Vericlaim, investigated the claim and, in a report dated November 10, 2015, acknowledged Anderson was a named insured under the builder's risk policy, but also noted that "the adjustment team ha[d] yet to establish whether significant delay/impact claim was incurred by the Insured as a result of this event." Premier was listed as the "Insured" in the letter. The report further stated: "At this stage, we are keeping an open mind as to whether subrogation will be a factor in the adjustment of the claim."

¶4. On November 23, 2015, Anderson sued Premier for the breach of contract, claiming that under the contract's general conditions Premier was responsible for the costs associated with the cable breakage because it was required "either (A) to obtain 'all risk' builder's risk insurance or (B) to be liable to [Anderson] for any loss not fully compensated by such insurance."[4] The complaint alleged Premier had breached its contractual obligations as it "ha[d] neither (a) produced insurance coverage for the property loss suffered by [Anderson,] nor (b) compensated [Anderson] for its property loss."

¶5. In its answer, Premier denied there was a breach of contract since it had obtained the required "all-risk" insurance and counterclaimed that Anderson was responsible for all workmanship and materials under the terms of the contract, entitling Premier to "indemnity for [Anderson's] claim" arising from the cable work. On March 22, 2016, Premier filed an

---

[3] The claim noted that the cause of the cable failure was "undetermined."

[4] Anderson also alleged other claims not relevant to the appeal in this case.

4

"Unopposed Motion for Leave to File Third-Party Complaint" under Mississippi Rule of Civil Procedure 14 and, on March 31, 2016, Premier filed a third-party complaint against PTE, the cable supplier, alleging claims of common-law indemnity, breach of implied warranty of merchantability, breach of implied warranty of fitness, products liability, and breach of express warranty. Premier argued that its liability was "entirely derivative of the conduct of PTE[.]"

¶6. PTE filed a motion to dismiss under Mississippi Rules of Civil Procedure 12(b)(6) and 14, contending that because Anderson's claim against Premier concerns its failure to act, i.e., "procure insurance to address this risk," the action against PTE should be dismissed "for improper third party practice." The circuit court granted PTE's motion and entered a final judgment of dismissal in its favor, concluding:

> [Anderson] has alleged a breach of contract by [Premier]. The alleged breach is the failure to obtain adequate "all risk" builders insurance. . . . Whether the insurance purchased covers this loss is not the question. Who was "negligent" is not the question. The question is whether the fact that [Anderson] has not been compensated for the loss is a breach of the contract between it and [Premier]. . . . [Anderson] is not suing [Premier] for the failure of the cables, but for failing to insure the project. . . . The simple breach of contract is not a tort and while the contract may impose the contractual duty to indemnify on a party, the contract does not give rise to an action for implied indemnity under the facts presented here.

On appeal, Premier submits that the circuit court erred in granted PTE's motion to dismiss.

## DISCUSSION

**Whether the circuit court erred in granting PTE's motion to dismiss.**

*A.    Standard of Review*

5

¶7.      The circuit judge granted PTE's motion to dismiss under the Rule 12(b)(6) standard, noting that a 12(b)(6) motion "tests the legal sufficiency of the complaint" and, assuming Premier's allegations are true, requires a determination "whether there is any set of facts pled that would entitle the plaintiff to relief."  A circuit court's grant or denial of a motion to dismiss is reviewed de novo.  *Breeden v. Buchanan*, 164 So. 3d 1057, 1060 (¶13) (Miss. Ct. App. 2015) (citing *Ralph Walker Inc. v. Gallagher*, 926 So. 2d 890, 893 (¶3) (Miss. 2006)). This Court is "not required to defer to the trial court's judgment or ruling."  *Id.* (quoting *Gallagher*, 926 So. 2d at 893 (¶4)).  For this Court to affirm a grant of a Rule 12(b)(6) motion to dismiss, it must be such that "no set of facts would entitle [the opposing party] to relief."  *Lowe v. Lowndes Cty. Bldg. Inspection Dept.*, 760 So. 2d 711, 712 (¶6) (Miss. 2000).[5]  Premier claims PTE failed to "meet this very high standard."

¶8.      Counsel for PTE argued at the motion hearing that it "filed [the motion] under Rule 12(b)(6) because that's the procedural key to get the Court to discuss and to deal with the Rule 14 issue[.]"  PTE argues on appeal, however, that the "appropriate standard of review would arise under Rule 14," stating that it "is not whether Premier can assert a set of facts entitling them to relief [but] . . . whether the [circuit] court abused its discretion in

---

[5] "A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint."  *Breeden*, 164 So. 3d at 1160-61 (¶13) (quoting *Rose v. Tullos,* 994 So. 2d 734, 737 (¶11) (Miss. 2008)).  "The allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim."  *Id.* at 1161 (quoting *State v. Bayer Corp.,* 32 So. 3d 496, 502 (¶21) (Miss. 2010)).

determining whether Premier's allegations of common-law indemnity and warranty claims meet the requirements imposed under Rule 14 for valid third party claims."[6] Regardless of whether we review this appeal under the stricter de novo standard of Rule 12(b)(6) as Premier asserts, or the abuse-of-discretion standard argued by PTE, we find the circuit court's dismissal of Premier's third-party complaint was error.

### B. Analysis of Premier's Claims

¶9. Premier contends that its "indemnity claim *and* also separate warranty claims, along with other claims against PTE for the failed cables, . . . . are proper third party claims under Rule 14," which provides:

> After commencement of the action and upon being so authorized by the court in which the action is pending on motion and for good cause shown, a defending party may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to [it] for all or a part of the plaintiff's claim*[.]"

M.R.C.P. 14(a) (emphasis added). The advisory-committee note to Rule 14 explains:

> It is essential that the third-party claim be for some form of derivative or secondary liability of the third-party defendant to the third-party plaintiff. Impleader is not available for the assertion of an independent action by the

---

[6] Rule 14 provides that "[a]ny party may move to strike the third-party claim, or for its severance or separate trial." While PTE could have filed a motion to strike Premier's third-party complaint, or for its severance or a separate trial under Rule 14(a), it was not improper for PTE to move for dismissal under Rule 12(b)(6). As noted in Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 *Federal Practice and Procedure*: § 1460, p. 543-44 (3d ed. 2010), "not only is the third-party plaintiff's claim subject to dismissal directly under Rule 14(a), *but it also may be challenged by the impleaded party on one of the grounds set forth in Rule 12* or by a motion for summary judgment under Rule 56." (Emphasis added).

defendant against a third party, even if the claim arose out of the same transaction or occurrence as the main claim. . . . The requirement that the third-party claim be for derivative or secondary liability may be met by, for example, *on allegation of a right of indemnity* (*contractual or otherwise*)*, contribution, subrogation, or warranty*. The rules do not, however, create any such rights. It merely provides a procedure for expedited consideration of these rights where they are available under substantive law.

(Emphasis added).

### i. Common-Law Indemnity Claim

¶10. Premier asserts that PTE "may be liable" for "all or part of [the] plaintiff's claims against" it; thus, it has a "textbook common law indemnity" claim. A claim for common-law indemnity has "[t]wo critical prerequisites[:] . . . (1) [t]he damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong." *J.B. Hunt Transp. Inc. v. Forrest Gen. Hosp.*, 34 So. 3d 1171, 1173-74 (¶11) (Miss. 2010) (quoting *Home Ins. Co. v. Atlas Tank Mfg. Co.,* 230 So. 2d 549, 551 (Miss.1970)). In *Celotex Corporation v. Becknell Construction Inc*, 325 So. 2d 566 (Miss. 1976), Becknell, the general contractor, was found liable for damages that arose after a subcontractor, Campbell Roofing, installed a new roof at an airport using materials supplied by Celotex. *Id*. at 567. Becknell filed a third-party action against Campbell and Celotex, and the trial court awarded a judgment in favor of Becknell. *Id*. at 566. The Mississippi Supreme Court affirmed the judgment, concluding:

Becknell was required to pay money because of the defective workmanship of Campbell and defective materials furnished Campell by Celotex. Becknell's

8

liability arose because it was a prime contractor and warranted all materials and workmanship. Becknell paid the Airport Authority the cost of placing a new roof on the buildings and, in all fairness, this expense should be borne by Campbell and Celotex. We therefore hold that Becknell is entitled to recover on the theory of indemnity.

*Id*. at 568.

¶11.    In *Bush v. City of Laurel*, 215 So. 2d 256, 257 (Miss. 1968), which was cited by the court in *Becknell*, the City of Laurel was sued by a woman who had fallen into a ditch. The plaintiff obtained a verdict against the city, and the city's liability was based on a "non-delegable duty to maintain its streets and sidewalks in a reasonably safe condition." *Id.* at 257. The city then sued Bush (the construction company) for indemnity. On appeal, the supreme court upheld the city's right of indemnity even though it was sued in tort and was found liable in the underlying action:

An obligation to indemnify may arise from a contractual relation, from an implied contractual relation or out of liability imposed by law. When one person is required to pay money which another person in all fairness should pay, then the former may recover indemnity from the later in the amount he paid, provided he has not conducted himself in a wrongful manner so as to bar his recovery. . . .The rule is . . . : "[I]n Mississippi, as generally elsewhere, a right of indemnity arises in favor of one not actively at fault against an active wrongdoer."

*Id.* at 259-60 (internal citations omitted) (quoting *St. Louis-San Francisco Ry. Co. v. United States*, 187 F.2d 925, 927 (5th Cir. 1951)).

¶12.    Here, the circuit court concluded:  "Any right of recovery for any loss or damages [Premier] might have against PTE arises from either a completely separate contract, the sale of the material, the products liability statute, or warranties implied by law or provided by

9

contract or statute. [Premier] has no indemnity claim against PTE." Under the terms of Premier's contract with Anderson, we disagree. What the circuit court (and to some extent, the parties) disregard is that section 11.3.1 of the contract's General Conditions did not provide that Premier *either* provide the required insurance *or* assume liability for any loss not covered by insurance; rather, Premier was contractually required to provide the "all-risk" insurance *and* "be liable to the Contractor to the extent such loss is not fully compensated by insurance[.]" Therefore, this is not an "either/or" situation, but a "both/and" situation. If Anderson had merely brought suit to enforce the first part of section 11.3.1 (the requirement to purchase the insurance), we would find no error in the court's holding. But the contract's general conditions imposed a legal obligation on Premier not only to "purchase or maintain" builder's "all-risk" insurance, but also to compensate Anderson for any loss attributable to the failure to obtain the insurance *and any loss not covered by the builder's insurance*. We find this distinction important – Premier's liability is broadened by this language; in effect, Premier has agreed to serve as a secondary insurer.

¶13. Thus, we find the claim for common-law indemnity is not an independent cause of action and is a proper third-party claim under Rule 14. As Premier notes in its brief, if Anderson is successful in its suit against Premier, "and it is judicially determined that [Premier] has contractual liability for the damages associated with the PTE cable breaks, [Premier] will have to pay [Anderson] significant damages under legal compulsion."[7]

_____

[7] We express no opinion as to whether Premier is liable to Anderson.

10

Moreover, Premier "did not actively or affirmatively participate in the wrong." There is no allegation that Premier was negligent or at fault for the loss.

¶14. We hold that the circuit court's finding – that there is no basis for common law indemnity for Premier's failure to perform under the terms of the contract between Anderson and Premier – was in error.

### ii. Warranty Claims

¶15. As we have already noted, the comments to Rule 14 expressly state that "[t]he requirement that the third-party claim be for derivative or secondary liability may be met by . . . allegation of a right of indemnity (contractual or otherwise), contribution, subrogation, *or warranty*." (Emphasis added). Premier also asserted claims of breach of implied warranty of merchantability, breach of implied warranty of fitness, and breach of express warranty. The circuit court determined "any loss or damages [Premier] might have against PTE arise[] from either a completely separate contract, the sale of material, the products liability statute, or warranties implied by law[.]"

¶16. Our supreme court has held:

> The purpose of Rule 14, according to the comments, is to avoid the problem of circuitous or duplicative actions, which occur when a defendant, *held liable in the first action, is required to bring a second action against another party he alleges is derivatively or secondarily liable to him for all or part of the judgment.* Impleader, under the Federal Rules, should only be used, where the third party's liability is in some way derivative of the outcome of the main claim. It is clear that impleader under Rule 14 requires that the liability of the third party be dependent upon the outcome of the main claim.

*Weyerhaeuser Co. v. Wells*, 593 So. 2d 1010, 1013 (Miss. 1992) (emphasis added) (citations

11

and quotations omitted). The "main claim" concerns Premier's contractual obligation with Anderson not only to provide "all-risk insurance," but to cover any loss or damage not "fully compensated" by the insurance policy and, therefore, is potentially liable for the loss suffered by Anderson due to the allegedly defective material supplied by PTE.[8] Premier's claim against PTE arose "out of the same transaction or occurrence" as Anderson's suit against Premier, and any breach of warranty by PTE caused the loss in this instance. We find whether Premier is entitled to any relief on its claims is "derivative of the outcome" of Anderson's claim.

¶17. Premier's product-liability claims were also properly brought as an additional claim. *See* M.R.C.P. 14 cmt. ("Once a third-party claim is properly asserted, however, the third-party plaintiff may assert whatever additional claims the third-party plaintiff has against the third-party defendant under Rule 18(a).")

¶18. Accordingly, we reverse the circuit court's dismissal of Premier's third-party complaint and remand for further proceedings.

¶19. **REVERSED AND REMANDED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, GREENLEE AND WESTBROOKS, JJ., CONCUR. FAIR AND WILSON, JJ., NOT PARTICIPATING.**

---

[8] Under the contract terms, uncompensated losses may include "policy deductibles, exclusions, lapse of coverage, gaps in coverage, coverage limits, inadequacy of coverage, or other reason which causes the loss to be uninsured, in whole or in part."